Dale C. Christensen, Jr. (DC4441)
Bruce G. Paulsen (BP9563)
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004

Attorneys for Plaintiff Life Receivables Trust

JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL, 60611
John H. Mathias, Jr.
Robert T. Markowski
James T. Malysiak
Of Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIFE RECEIVABLES TRUST,<br><br>Plaintiff,<br><br>- v. -<br><br>GOSHAWK SYNDICATE 102 at LLOYD'S,<br><br>Defendant. | Civil Action No. 08CV36751(LAK) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENJOIN ARBITRATION**

**TABLE OF CONTENTS**

**Page**

Table of Authorities ........ ii

Preliminary Statement ........ 1

Statement of Facts ........ 4

Argument ........ 4

I. LRT Has A Likelihood Of Success On Its Claim That The Arbitration Provision Is A Nullity ........ 4

II. Syndicate 102's Rescission Claims Are Not Arbitrable ........ 7

III. In the Alternative, Syndicate 102 Cannot Arbitrate Its Rescission Claim Until It Pays First Under the CCI contracts ........ 10

IV. LRT Has Shown Irreparable Harm ........ 12

V. The Balance of Hardships Heavily Tips in LRT's Favor ........ 14

Conclusion ........ 16

Plaintiff Life Receivables Trust ("LRT"), by its attorneys Seward & Kissel LLP, submits this memorandum of law in support of its motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65 barring the arbitrations entitled (i) *In the Matter of Arbitration Between GOSHAWK DEDICATED LIMITED, as sole Member of Syndicate 102 at Lloyd's for the 2000 Year of Account, and KITE DEDICATED LIMITED, f/k/a Goshawk Dedicated (No. 2) Limited, as sole Member of Syndicate 102 at Lloyd's for 2001 – 2003 Years of Account and LIFE RECEIVABLES TRUST and LIFE SETTLEMENT CORPORATION, d/b/a Peachtree Life Settlements*, ICDR No. 50 195 T 00119 08 (the "Rescission Arbitration"), and (ii) *In the Matter of the Arbitration Between LIFE RECEIVABLES TRUST and GOSHAWK SYNDICATE 102 AT LLOYD'S*, ICDR No. 50 195 T 00372 05 (the "Wang Arbitration"). [1]

## **Preliminary Statement**

Plaintiff LRT brings this motion to preliminarily enjoin proceedings in Syndicate 102's just-filed arbitration[2] because (i) no arbitration agreement exists, (ii) the provisional grant of arbitral adjudicative authority in the parties' contracts has been rendered ineffectual under the United States Supreme Court's very recent decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 2008 U.S. LEXIS 2911, 76 U.S.L.W. 4168 (Mar. 25, 2008), (iii) Syndicate 102 seeks to arbitrate claims of rescission and other issues that are not arbitrable and (iv) in any event, Syndicate 102 has failed to satisfy a condition precedent to arbitration, namely, payment to LRT of the amounts due to it under the contracts in issue. It is axiomatic that arbitration is a creature

---

1 Capitalized terms not defined herein have the meaning given in the Complaint and the Affidavit of Dale C. Christensen, Jr., sworn to April 16, 2008 ("Christensen Aff.").

2 LRT also seeks to enjoin the Wang Arbitration, commenced two and one-half years ago by LRT to secure payment on a single claim. The hearing in the Wang Arbitration is scheduled for September 2008. Expert reports are due on April 30, 2008 and deposition discovery is scheduled to begin in May. Christensen Aff. ¶ 56.

of contract and a party can arbitrate claims only as provided by the terms of the arbitration agreement and the underlying contract.

The contractual grant of adjudicative authority to an arbitral tribunal at issue here is explicitly made provisional rather than unconditional:

> 3. The Arbitration Tribunal may in its sole discretion make such orders and directions as it considers to be necessary for the final determination of the matters in dispute; **provided that the parties shall each retain the right to appeal errors of law to a court of law having jurisdiction of the matters addressed herein and, each party executing this Insurance hereby consents and agrees that the state or federal courts located in New York shall have exclusive jurisdiction to hear and determine any such matters.** The Arbitration Tribunal shall have the widest discretion permitted under the law governing the arbitral procedure when making such orders or directions.

Christensen Aff. Ex. 1 Tabs A, B, C and D at 23 (emphasis added). The parties contractually empowered an arbitration tribunal to adjudicate matters in dispute between them if, and only if, the parties each retained the right to appeal errors of law to New York state or federal courts. As a result of the United States Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 2008 U.S. LEXIS 2911, 76 U.S.L.W. 4168 (Mar. 25, 2008), however, it is now clear that this provisional grant of arbitral adjudicative authority is ineffectual and cannot serve as the basis for divesting the parties of their expressly retained right to invoke the original jurisdiction of this Court to resolve the serious multimillion dollar legal disputes which Syndicate 102 seeks to arbitrate.

In *Hall Street Associates*, the Supreme Court found that a term in an arbitration agreement providing for judicial review of the arbitrator's decision for errors of law was not enforceable, holding that the grounds for a federal court's review of arbitration awards are limited to those grounds set forth in sections 10 and 11 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10, 11. Because the provisional grant of arbitral adjudicative authority in the CCI

contracts at issue here contains a similar term providing each party with the right to judicial review of legal issues, the *Hall Street* holding renders it ineffectual. The parties' reservation of the right to judicial review of legal issues by New York courts is a specifically stated precondition to any grant of power to arbitrators.

Alternatively and significantly, the CCI contracts here specifically preserve the right to litigate and the jurisdiction of this Court through a provision clearly stating that each party "IRREVOCABLY AGREES THAT ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS INSURANCE OR ANY RELATED TRANSACTIONS MAY BE BROUGHT IN THE COURTS . . . OF THE UNITED STATES OF AMERICA FOR THE SOUTHERN DISTRICT OF NEW YORK." Christensen Aff. Ex. 1 at Tabs A, B, C and D at 12.

Syndicate 102's claim for rescission in the Rescission Arbitration is also forbidden and thus made non-arbitrable by the express terms of the CCI contracts, which provide that Syndicate 102's obligation to pay LRT's claims "shall not be subject to any right of rescission."

Nor do the CCI contracts permit Syndicate 102 "to submit any dispute as to the Underwriters' obligation to pay a Claim under this Insurance to arbitration prior to a payment of such Claim," thereby making payment of the claim by Syndicate 102 an express condition precedent to arbitration. Because Syndicate 102 has not paid any claims, it has not fulfilled this mandatory condition precedent to its submitting any disputes to arbitration. Moreover, Syndicate 102's contractual obligation to pay claims to LRT is unconditional, with its sole recourse being to pursue indemnity claims against non-party Peachtree.

For these reasons, LRT's motion to enjoin the arbitrations with respect to LRT should be granted.

## **Statement of Facts**

LRT respectfully refers the Court to the Affidavit of Dale C. Christensen, Jr., sworn to April 16, 2008 ("Christensen Aff.") for a full recitation of the facts of this matter.

## **Argument**

"The general standard for issuing a preliminary injunction requires that the movant show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *See Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997) (citations omitted); *see also Merrill Lynch Investment Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003).

Challenges to the existence or validity of an arbitration clause are for the Court, not the arbitrators, even where there is a broad agreement to submit matters to arbitration. "[T]he district court must first determine two threshold issues that are governed by state rather than federal law: (1) Did the parties enter into a contractually valid arbitration agreement? and (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003); *Nichols v. Washington Mut. Bank*, No. 07-CV-3216 (JG), 2007 US Dist. LEXIS 85936, at *19-20. (E.D.N.Y. Nov. 21, 2007).

### **I. LRT Has A Likelihood Of Success On Its Claim That The Arbitration Provision Is A Nullity**

Challenges to the existence or validity of an arbitration provision are for the Court, not the arbitrators. *Cap Gemini*, 346 F.3d at 365; *Nichols*, 2007 US Dist. LEXIS 85936 at *22-23. Here, the arbitration provision in the parties' contracts has been rendered ineffectual as

a result of *Hall Street Associates*. The Supreme Court in *Hall Street* held that a provision in an arbitration agreement that a court entering judgment on an award could "vacate, modify or correct any award . . . where the arbitrator's conclusions of law are erroneous" was invalid because FAA Sections 10 and 11 are the "exclusive grounds for expedited vacatur and modification." 2008 U.S. LEXIS at *14. Those sections provide for only very limited review of the arbitration award and do not provide for review of errors of law. The arbitration provision here contains essentially the same language as that at issue in *Hall Street Associates*, but unlike *Hall Street Associates*, it is tied directly to the grant of power to the arbitrators:

> 3. The Arbitration Tribunal may in its sole discretion make such orders and directions as it considers to be necessary for the final determination of the matters in dispute; **provided that the parties shall each retain the right to appeal errors of law to a court of law having jurisdiction of the matters addressed herein** and, each party executing this Insurance hereby consents and agrees that the state or federal courts located in New York shall have exclusive jurisdiction to hear and determine any such matters. The Arbitration Tribunal shall have the widest discretion permitted under the law governing the arbitral procedure when making such orders or directions.

Christensen Aff. Ex. 1, Tabs A, B, C and D at 23 (emphasis added). That is, the grant of power to the arbitrators was expressly conditioned upon the parties' retaining the right to appeal errors of law by the arbitrators to a court.[3]

Because *Hall Street* renders the parties' retained right to judicial review of errors of law ineffectual, it also nullifies the provisional grant of arbitral adjudicative authority in the CCI contracts. The judicial review proviso is a fundamental limitation on the parties'

---

3 Under the applicable rules – the ICDR International Dispute Resolution Procedures (applicable here because the parties are from different countries and no other rules have been specified (ICDR Procedures International Arbitration Rule ("ICDR Rules") art. 1(a), available at http://www.adr.org/sp.asp?id=33994) – the parties are free to modify the ICDR Rules themselves in writing (*id.*), so that the ICDR's grant of powers to the arbitrators must be deemed modified by, and subject to, the granting clause and proviso fashioned by the parties.

provisional grant of authority to the arbitrators, and without such judicial review there is no agreement to arbitrate:

> [W]here "it is clear that the failed [forum selection] term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail."

*In re Salomon Inc. Shareholders Deriv. Litig.*, 68 F.3d 554, 561 (2d Cir. 1995) (quoting *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359 (N.D. Ill. 1990)). In *Salomon Inc.*, the Second Circuit declined to enforce an arbitration agreement where the designated exclusive arbitral forum declined jurisdiction. The Second Circuit found that the choice of forum was "central to the parties' agreement to arbitrate" and affirmed the district court's denial of a motion to appoint substitute arbitrators. *Id.* The Ninth Circuit, in determining under federal law that an entire arbitration provision became inoperable because of the unenforceability of certain of its terms, explained that:

> It is a well known principle in contract law that a clause cannot be severed from a contract when it is an integrated part of the contract. As one leading treatise has noted, "a contract should be treated as entire when by consideration of its terms, nature and purposes each and all of the parts appear to be interdependent and common to one another." Joseph D. Calamari & Joseph M. Perillo, Contracts 478 n.76 (3d ed. 1987). As we noted in one of our early surveys of contract law, a "contract is entire, and not severable, when by its terms, nature and purpose, it contemplates and intends that each and all of its parts, (and) material provisions . . . are common to the other, and interdependent. *Hudson v. Wylie*, 242 F.2d 435, 446 (9th Cir. 1957).

*Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1248 (9th Cir. 1994).

The court in *Graham Oil* invalidated an arbitration provision containing illegal terms, where the unlawful provisions were part of the overall procedure for handling disputes. *Id.* at 1249. The Second Circuit's analysis in *In re Salomon Inc.* and the Ninth Circuit's in

*Graham Oil* are applicable here because the inoperable term – judicial review of errors of law– is not ancillary but central to the provisional agreement to arbitrate, as it is essential to the very power of the arbitrators to conduct the arbitrations. Absent judicial review for legal errors by the arbitrators, the parties had no meeting of minds to resolve disputes through arbitration. Because the arbitration provisions are identical in the CCI contracts relating to both the Rescission Arbitration and the Wang Arbitration, there is no contractual agreement providing for either arbitration.

This conclusion is buttressed by the parties' agreement to the broad jurisdiction of the federal and state courts over any legal dispute arising from these transactions:

> THIS CONTRACT SHALL BE GOVERNED BY, THE INTERNAL LAWS OF THE STATE OF NEW YORK, U.S.A. WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. EACH PARTY . . . HEREBY IRREVOCABLY AGREES THAT ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS INSURANCE OR ANY RELATED TRANSACTIONS MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK LOCATED IN NEW YORK CITY OR OF THE UNITED STATES OF AMERICA FOR THE SOUTHERN DISTRICT OF NEW YORK AND HEREBY IRREVOCABLY SUBMITS TO THE PERSONAL JURISDICTION AND VENUE OF SUCH COURTS FOR THE PURPOSES THEREOF. . . .

Christensen Aff. Ex. 1, Tabs A, B, C and D at 12. The parties thus provided an alternative to the arbitration provision, and the Defendant has consented to the jurisdiction and venue of this Court.

## II. <u>Syndicate 102's Rescission Claims Are Not Arbitrable</u>

The Rescission Arbitration seeks rescission of all the CCI contracts, so that Syndicate 102 would have no obligation to pay LRT's existing or future claims. The CCI contracts themselves, however, forbid Syndicate 102 from bringing rescission claims against

LRT.[4] Because the CCI contracts themselves prohibit rescission claims, LRT cannot have agreed to arbitrate them:

> In determining whether a given dispute must be arbitrated the court looks to all terms of the parties' agreement bearing on arbitration. Even though the words of the agreement's arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement clearly and unambiguously negating or limiting it with respect to a matter in dispute.

*In re Woodcrest Nursing Home v. Local 144, Hotel, Hospital, Nursing Home & Allied Servs. Union*, 788 F.2d 894, 898 (2d Cir. 1986) (citations omitted).

The Court must therefore "make a threshold inquiry into whether the contract's arbitration provisions arguably cover the dispute at hand" and "if the arbitration agreement cannot reasonably be construed to cover [the dispute at hand] arbitration need not be compelled." *Id*. (*quoting McAllister Bros., Inc. v. A&S Transp. Co.*, 621 F.2d 519, 522 (2d Cir. 1980)).

Syndicate 102's claim in the Rescission Arbitration is beyond the scope of the CCI contracts, which explicitly provide:

> 2. *Obligations Unconditional*. Subject only to the section entitled Contingency Insurance Premium below, [Syndicate 102] agree[s] that . . . **their obligation to pay the full and complete Net Death Benefit to the Assured [LRT] by payment into the Collection Account or to the Loss Payee** . . . (A) **is absolute, unconditional and irrevocable** . . . (C) **shall not be subject to any right of rescission, set-off, diminution or counterclaim or defense of any kind**, including without limitation (i) fraud or misrepresentation by any person or entity . . . (ii) any failure by . . . the Assured, the Servicer, the Back-Up Servicer or the Originator or any other person or entity . . . to comply with any covenant or agreement contained in this Insurance or the Servicing Agreement or in any other agreement or instrument or any applicable legal requirement, (iii) any breach of or inaccuracy in any representation, warranty, certification or statement made by the Assured, the Servicer, the Originator, the Back-Up Servicer . . . in

4 LRT also notes that Claimants in the Rescission Arbitration, Kite Dedicated, Ltd. and Goshawk Dedicated, Ltd., are not themselves identified parties in the CCI contracts.

> this Insurance or the Servicing Agreement or in any Coverage Certification, monthly *bordereaux*, Claim Certification or other notice, certificate, report or other document delivered pursuant to or in connection with this Insurance, (iv) any negligence or misconduct by the Assured, the Servicer, the Originator, the Back-Up Servicer or any other person or entity . . . (vi) any other circumstance whatsoever which might, but for the provisions of this paragraph, constitute a legal or equitable discharge of the obligations of [Syndicate 102] hereunder; **it being understood and agreed that the Lender is relying upon the absolute and unconditional nature of the obligations of the Underwriters in entering into the Lending Transactions and providing financing thereunder.**

*See* Christensen Aff. Ex. 1, Tabs A, B, C and D at 16-17 (emphasis added). The CCI contracts forbid Syndicate 102's asserting a rescission claim or otherwise seeking to vitiate LRT's right to payment. Syndicate 102 expressly waived whatever rights it had. The parties cannot have agreed to arbitrate claims that the contract expressly forbids.

Where such unequivocal language limiting the arbitrability of claims is found, courts in this Circuit have routinely held such claims to be non-arbitrable and enjoined the underlying arbitrations. *See e.g.*, *Maryland Cas. Co.*, 107 F.3d at 983 (finding claim not arbitrable and enjoining arbitration where the "broad scope of the arbitration clause in the instant Agreement is expressly limited by Article I"); *In re Woodcrest Nursing Home*, 788 F.2d at 898 (holding that the claims were non-arbitrable where "the exclusionary clause of . . . the parties' Agreement is crystal clear and unambiguous regarding disputes raised by 'non-slotted' employees other than those with respect to three specifically enumerated exceptions").

Based on the plain language of the CCI contracts, it is clear that LRT has a strong likelihood of success on the merits that Syndicate 102's rescission claim is not arbitrable.

## III. In the Alternative, Syndicate 102 Cannot Arbitrate Its Rescission Claim Until It First Pays Under the CCI Contracts

Even assuming *arguendo* that Syndicate 102's claim of rescission against LRT were viable and arbitrable (which it is not), the CCI contracts make payment to LRT of any disputed claim an express condition precedent to submission to arbitration:

> [U]nder no circumstances (other than for reasons set forth in clause (a) or (b) of the immediately preceding sentence) shall the Underwriters be entitled to submit any dispute as to the Underwriters' obligation to pay a Claim under this Insurance to arbitration prior to payment of such Claim as set forth in the section entitled Claim Procedures.

Christensen Aff. Ex. 1, Tabs A, B, C and D at 6.[5]

In the Rescission Arbitration, Syndicate 102 seeks rescission of all of the CCI contracts. It is undisputed that Syndicate 102 has not made any payments to LRT on the Walter, Mecca and Wang Claims.[6] Accordingly, based on the unambiguous requirements of the CCI contracts, Syndicate 102 has failed to meet a condition precedent to submitting its claims to arbitration.

Failure to fulfill a condition precedent voids the parties' provisional grant of authority to the arbitrators. "Though courts routinely compel parties to arbitrate disputes where a valid agreement exists, it is clear that the FAA only requires arbitration agreements to be enforced 'in accordance with their terms.'" *Darrah v. Friendly Ice Cream Corp.*, 328 F. Supp. 2d 319, 321 (N.D.N.Y. 2004) (denying motion to compel arbitration for failure to comply with

---

5 The "other reasons" referred to in the CCI contracts are that, according to the issuing life insurance company, (a) the subject life insurance policy is no longer in force or (b) the Assured (that is, LRT) is not the "owner of and beneficiary under" the policy. *Id.* Those reasons do not apply here.

6 Although Mr. Wang passed away after commencement of the Wang Arbitration, and the life insurance company paid the NDB on the Wang Policies, Syndicate 102 remains in default of its obligation to pay LRT's damages, including premiums paid by LRT to maintain the Wang Policies and loss of income on the NDB. Christensen Aff. ¶ 44.

condition precedent). The court in *Darrah* denied a motion to compel arbitration where the employer seeking arbitration had failed to comply with an express condition precedent (there, an obligation to use the company's "Open Door Policy"). Because the employer failed to comply with the condition precedent, "there was never an agreement by *both* parties to arbitrate the …claims." *Id.* at 323 (emphasis in original). Most importantly, the New York Court of Appeals – and New York State law governs here – has stated as a matter of substantive contract law that compliance with a condition precedent is "a prerequisite to the submission of any dispute to arbitration, in effect a precondition to access to the arbitral forum" and is properly the subject for judicial determination. *In re Arbitration between County of Rockland and Primiano Constr. Co., Inc.*, 51 N.Y.2d 1, 7, 431 N.Y.S.2d 478, 481 (1980).[7] Here, the condition precedent is properly a subject for judicial determination. Because there is no question that Syndicate 102 has not complied with the "pay first" provision, LRT has a strong likelihood of success on the merits on this claim.

Further, the "pay first" provision is valid and enforceable – and indeed Lloyds' has brought litigation enforcing similar provisions. Courts routinely uphold the enforceability of "pay now, argue later" contractual clauses, also referred to as "pay now, sue later" or "pay now, dispute later" clauses. *See, e.g., Society of Lloyd's v. Ashenden*, 233 F.3d 473, 479-81 (7th Cir. 2000) ("pay now, sue later" clause in a contract between Lloyd's and American members of

---

7 The New York Court of Appeals distinguished between conditions precedent that are a matter of substantive contract law, "provisions which in point of time are intended to be preliminary to the institution of any arbitration proceeding and in a precise sense are unrelated to it, *e.g.*, a requirement that before any demand for arbitration can be made, the dispute between the parties be referred to the architect or to the partnership – 'conditions precedent in the literal meaning of that term,'" and conditions that are procedural in nature – "requirements or conditions in arbitration, *e.g.*, that the demand be made within a specified time, or be served in a specified manner or on specified persons." *Id.* at 8-9, 431 N.Y.S.2d at 482. The parties by agreement have the ability to determine into what category the condition falls. *Id.* Here, the unambiguous terms of the contract make Syndicate 102's payment prior to commencing arbitration a substantive condition precedent.

insurance syndicates does not violate due process); *Society of Lloyd's v. Edelman*, 03 CV 4921 (WHP), 2005 U.S. Dist. LEXIS 4231, at *13-16 (S.D.N.Y. Mar. 22, 2005); *Society of Lloyd's v. Webb*, 156 F. Supp. 2d 632, 639-42 (N.D. Tex. 2001), *aff'd*, 303 F.3d 325 (5th Cir. 2002).[8]

These courts have stated, consistent with LRT's position, that "if a [party] has a claim against Lloyd's that he was induced by fraud, he may not raise it as a defense when Lloyd's is collecting [ ], but must bring the fraud claim in a separate suit, which must be separately filed." *See Webb*, 156 F. Supp. 2d at 639; *see also Edelman*, at *15 (noting that the defendants "were free to assert these claims in other proceedings").

For this further reason, Syndicate 102's rescission claim is not arbitrable and LRT has shown a likelihood of success on the merits.

**IV. <u>LRT Has Shown Irreparable Harm</u>**

LRT will be irreparably harmed if the Rescission Arbitration and the Wang Arbitration are not enjoined. The Supreme Court has made clear that "arbitration is a matter of

---

8 Lloyd's adopted the "pay now, sue later" provision after its market incurred aggregate underwriting losses of over $12 billion in the late 1980s due to asbestos and toxic tort claims. In reaction to these losses and to maintain the viability of the Lloyd's market, Lloyd's implemented the Reconstruction and Renewal ("R&R") Plan. The R&R Plan applied to every individual member of each Lloyd's syndicate, and had two major components. First, a newly formed company, Equitas Reinsurance Ltd. ("Equitas"), would reinsure each member's underwriting obligations for 1992 and prior underwriting years. Second, Lloyd's made an offer of settlement to protect each member from unlimited personal liability and to discount its Equitas Premium. All members signed a mandatory reinsurance agreement (the "Equitas Contract"). The Equitas Contract contained a "pay now, sue later" provision, requiring members to pay their Equitas Premium free and clear from any set-off, counterclaim or other deduction. When the R&R Plan became effective, each member was required to pay the Equitas Premium. The defendants in these cases failed to pay their Equitas Premium. Lloyd's paid the unpaid premiums and sued in England to recover the premiums from the defendants who asserted various defenses based on fraud and counterclaims. The English courts held that regardless of whether the members could prove fraud, the "pay now, sue later" clause precluded them from raising those arguments in Lloyd's action to recover the premiums. The suits by Lloyd's in the U.S. involved its efforts to enforce the judgments awarded by the English courts against the members for the premiums. The U.S. courts agreed with the English courts that the "pay now, sue later" clause in the Equitas Contract was enforceable. *See generally, Edelman,* at *3; *Ashenden*, 233 F.3d at 478.

contract and a party cannot be required to submit to arbitration any dispute which he has not so agreed to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Thus, in this Circuit, courts have regularly found irreparable harm where a party is forced to arbitrate a dispute that it has not agreed to arbitrate, and thereby expend time and resources. *See Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997) ("[Plaintiff] would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable."); *Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler P.C.*, No. 08 Civ. 02152, 2008 U.S. Dist. LEXIS 22026, at *12 (S.D.N.Y. Mar. 20, 2008) ("the Second Circuit has held that a party forced to arbitrate a dispute that is beyond the purview of the arbitration agreement suffers irreparable harm"); *Int'l Trust Co. of Berm. v. Fahnestock & Co.*, No. 95 Civ. 3865, 1995 U.S. Dist. LEXIS 15050, at *3 (S.D.N.Y. Oct. 12, 1995)("A party that has not agreed to arbitrate a dispute will suffer irreparable harm if it [*sic*] forced to submit to arbitration.") Here, the arbitration provision of the CCI contracts is wholly void under *Hall Street Associates*, and LRT will be irreparably harmed if the Rescission or Wang Arbitrations proceed.

Further, LRT will be irreparably harmed if the Rescission Arbitration – in which Syndicate 102 asserts claims that LRT did not agree to arbitrate and as to which Syndicate 102 has failed to meet a condition precedent – is not enjoined. "Compelling arbitration of a matter not properly subject to arbitration constitutes 'per se irreparable harm.'" *Tellium, Inc. v. Corning Inc.*, No. 03 Civ. 8487 (NRB), 2004 U.S. Dist. LEXIS 2289, at *8 (S.D.N.Y. Feb. 13, 2004)(*quoting Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union Local 365*, 975 F. Supp. 445, 446-47 (E.D.N.Y. 1997)). LRT will suffer irreparable harm by having to arbitrate claims that none of the parties ever intended to arbitrate. LRT will needlessly be forced

to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable. Christensen Aff. ¶¶ 49-58.

LRT is also entitled to a temporary restraining order enjoining the Rescission and Wang Arbitrations pending determination of this motion. The arbitrations are moving forward, and LRT will be prejudiced and irreparably harmed if temporary relief does not issue. Syndicate 102 has now stated its intention to have now the ICDR pick the arbitrator for this proceeding. Christensen Aff. ¶ 55. Further, the ICDR has sought to schedule an administrative conference in the matter in the next week. Christensen Aff. ¶ 55. In the Wang Arbitration, expert reports are due on April 30, and depositions are scheduled to commence in May. Christensen Aff. ¶ 56. Absent a temporary restraining order, LRT will be forced either to forego its procedural rights in the arbitrations or participate in arbitrations that are a nullity. *See Int'l Trust Co.*, 1995 U.S. Dist. LEXIS 15050 at *7. "The standards for granting a temporary restraining order and a preliminary injunction are the same." *Gund, Inc. v. SKM Enters., Inc.*, No. 01 Civ. 0882 (CSH), 2001 U.S. Dist. LEXIS 1324, at *4 (S.D.N.Y. Feb. 14, 2001). Because LRT has shown a likelihood of success on the merits and irreparable harm if an injunction is not granted, it is entitled to a temporary restraining order enjoining the Rescission and Wang Arbitrations.

## V. The Balance Of Hardships Heavily Tips In LRT's Favor

LRT has at the very least demonstrated serious questions after *Hall Street Associates* concerning the very existence of an arbitration agreement, whether the Rescission Arbitration is within the scope of the arbitration provision of the CCI contracts and concerning Syndicate 102's indisputable noncompliance with the "pay first" condition precedent. LRT faces multiple hardships if the Rescission Arbitration and Wang Arbitration are not enjoined:

- Arbitration under a null and ineffectual arbitration provision
- Loss of the fundamental "pay first" and "no rescission" contract rights

- Cost and expense of arbitrating non-arbitrable claims

Conversely, there is no prejudice to Syndicate 102 if the Court grants Plaintiffs' motion for a preliminary injunction. The Rescission Arbitration has only just been commenced, and the Wang Arbitration, which, despite pending for several years, has had no depositions taken and discovery is not complete. Further, Syndicate 102 has already received all of the premiums on the CCI contracts as to which it claims rescission, including those premiums relating to the Walter and Mecca Policies, and thus would not be prejudiced in that respect. A preliminary injunction would merely maintain the status quo while the Court can adjudicate the issues.

Based on the forgoing, LRT has shown that the balance of hardships weigh heavily in its favor and the Court should grant LRT's motion for a preliminary injunction of the Rescission and Wang Arbitrations.

**Conclusion**

For the foregoing reasons, the Court should issue a preliminary injunction enjoining proceedings in the Rescission Arbitration and staying the Wang Arbitration pending a determination of the merits of this matter, and grant such other and further relief as to the Court may seem just and proper.

New York, New York
April 17, 2008

Respectfully submitted,

SEWARD & KISSEL LLP

/s/ Dale C. Christensen, Jr.

By: Dale C. Christensen, Jr. (DC4441)
Bruce G. Paulsen (BP9563)
One Battery Park Plaza
New York, New York 10004
Tel: (212) 574-1200

*Attorneys for Plaintiff*
*Life Receivables Trust*

JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL, 60611
John H. Mathias, Jr.
Robert T. Markowski
James T. Malysiak
*Of Counsel*

SK 23236 0002 872776